UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKI L. KINCAID,

       Plaintiff,                         CIVIL ACTION NO. 08-14526

-v-                                               DISTRICT JUDGE JULIAN A. COOK

MICHAEL J. ASTRUE,                MAGISTRATE JUDGE VIRGINIA M.
Commissioner of Social Security,      MORGAN

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's cross-motion be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

### II. Background

      Plaintiff alleges that she is disabled and is entitled to Supplemental Security Income (SSI) and Social Security Disability Insurance Benefits (DIB), due to injuries to her right leg and knee, torn ACL, cracked tibula, and depression. She alleges an onset date of May 13, 2004. (Tr. 46-48, 58-59) Plaintiff is a high school graduate, and has a work history as a childcare provider, driver, housekeeper, line worker, and program aid. (Tr. 59, 63) Plaintiff was 46 years old at the time of the ALJ's decision. (Tr. 22)

1

Plaintiff's claim was denied and a hearing was held before an administrative law judge (ALJ), John Christensen. (Tr. 15, 27) Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 333-358) The ALJ also took testimony from a Vocational Expert ("VE").

On March 4th, 2008, the ALJ issued a written decision denying plaintiff's claim. (Tr. 12-24) The ALJ determined that plaintiff had impairments of "status post torn anterior cruciate ligament, medial and lateral meniscus tears, right knee and obesity." (Tr. 17) The ALJ also determined at step 2 that plaintiff's impairment was "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but at step 3 that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart Plaintiff of the Social Security regulations. (Tr. 17) While plaintiff could not perform her past relevant work, plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), but required a job that would incorporate a sit/stand option with no use of lower extremity for pushing and pulling, including use of foot controls. (Tr. 18, 22) The ALJ also stated that plaintiff could perform simple routine tasks in a low stress environment (one with minimal changes in the workplace setting). (Tr. 18) The ALJ concluded that, plaintiff could not perform her past relevant work but could perform other work which existed in significant numbers in the national economy. (Tr. 22-23) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 23)

The Appeals Council denied plaintiff's request on August 27, 2008. (Tr. 2) The ALJ's decision thus became the final decision of the Commissioner.

2

Plaintiff contends in this action that the ALJ formed an inaccurate hypothetical question because he incorrectly assessed plaintiff's credibility. The Commissioner contends that ALJ's decision is supported by substantial evidence and should thus be affirmed.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or

3

equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

4

**IV. Analysis**

The ALJ propounded two hypothetical questions to the VE. In the first, the ALJ asked the VE to assume a person:

> The same age, education and work experience as the Claimant. That individual has the following residual functional capacity. The would be sedentary work with a sit, stand option. No use of either lower extremity, no pushing and pulling including the use of foot controls. Can do simple routine tasks only in a low stress environment. By that I mean minimal changes in a work place setting. [Tr. 352]

In response to the hypothetical, the VE testified that the hypothetical person could perform a number of jobs, including surveillance system monitor, order clerk, and reception clerk. (Tr. 353) On the basis of that testimony, the ALJ concluded that plaintiff was not disabled. The second hypothetical question asked about a person who could not, because of pain and loss of sleep, sustain a consistent and persistence pace to do even simple tasks on a regular basis. The VE opined that such a person could not work. Thus, plaintiff argues, that the ALJ improperly assessed her credibility and that her pain is disabling.

It should be noted where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the

5

hypothetical. *Webb v. Commissioner of Social Security*, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." *Delgado v. Commissioner of Social Security*, 30 Fed.Appx. 542, 548 (6th Cir. 2002). In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of her limitations. Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her arguments that ALJ erred in assessing her credibility.

At the hearing, plaintiff testified that she previously worked as a housekeeper for hospice for a little over a year. (Tr. 343) Plaintiff also worked as a transporter, where she operated an FIA van. (Tr. 343) In addition, she has been program aid, taking care of mentally challenged adults by bathing them, cooking for them, taking them to work, helping with motor skills, and distributing medication and has been a childcare provider. (Tr. 344) Plaintiff testified that her previous jobs required her to be on her feet a good part of the day and that she was required to lift and carry objects of varying weight. (Tr. 344) Plaintiff testified during the hearing that she has not driven or had a driver's license in about four years, since she was injured in a car accident in 2000. (Tr. 341) In plaintiff's Function Report from January, 2005, however, plaintiff reported that she is able to ride in a car and drive a car alone, and that she does drive. (Tr. 75)

Plaintiff also testified that she lives with five children and has two children placed in her supervision by the court. (Tr. 339) The children's ages are seven, eleven, twelve, thirteen, fifteen, and there are two seventeen year-olds. (Tr. 339) Plaintiff's children do

6

the housework and her boyfriend takes care of the yard work. (Tr. 348) Plaintiff goes grocery shopping with the assistance of her daughter. (Tr. 348)

The plaintiff testified that she can no longer do her previous work since she fell down a set of stairs and injured her knee. (Tr. 344) Specifically, she said that she cannot lift patients because her knee slips out of place and she can't stand on her feet for long periods of time. (Tr. 345) The ALJ asked if the plaintiff could perform a job that would require no use of her legs and would offer the option to sit or stand as she pleases. (Tr. 345) Plaintiff responded that she could not perform such work because she has "difficulty sometime just getting out of bed in the mornings" and that pain in her right leg sometimes keeps her from getting out of bed. (Tr. 345-46) Plaintiff testified that she takes medication for her pain and swelling, which helps make her more comfortable but also makes her drowsy. (Tr. 346)

The plaintiff testified that she wears a brace on her right leg all the time since her surgery, but also has another brace that she has to wear all the time. (Tr. 341) She also has been using crutches since her surgery. (Tr. 341)

The ALJ determined that plaintiff's claims regarding her limitations were not totally credible to the extent they are inconsistent with the residual functional capacity assessment. Specifically, the ALJ noted

> Although the claimant alleges disability due to status post torn anterior cruciate ligament, torn medial meniscus, right knee and obesity, no physician has disabled the claimant. Claimant stated that she uses a cane to ambulate, but no doctor has prescribed a cane for the claimant to use. The claimant also reported she suffered from anxiety and depression. However, there are no treatment notes or medical reports in the evidence of record that shows claimant needs to be treated or has been treated on a regular basis. Furthermore, she has never been referred to a mental health professional. In January 2005, the claimant's doctor noted that the claimant

7

did not have a significant mental or emotional problem which limited activities, interests, and ability to relate to others. In assessing claimant's physical capabilities, claimant testified that she had to lie down during the day, with the need to elevate her legs, but no physician has directed claimant to do so or directed her to limit her activities. The claimant's daily activities are relatively normal. She is able to care for her children, cook, grocery shop and is independent in self-care and personal hygiene. The undersigned notes that no physician of record has disabled the claimant from all work. The undersigned finds the claimant is not significantly limited in her physical activities to preclude her from performing basic work activities. [Tr. 22]

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Walters, 127 F.3d at 531. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); see also Walters, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled." 20 C.F.R. § 404. 1529(a).

As noted by the ALJ, plaintiff's testimony is not supported by the medical evidence found in the record and plaintiff's statements in her Function Report. The medical evidence displays the existence of plaintiff's impairments, but the existence of the impairments is not in doubt and was accepted by the ALJ in forming plaintiff's RFC. (Tr. 17-22) What is in dispute is how extensive plaintiff's impairments are and the effect

8

they have on plaintiff's ability to work. Specifically, the plaintiff contends that the hypothetical that the ALJ relied on did not accurately represent the limitations caused by the pain in her knee. The ALJ addressed the limitations caused by her impairment by determining her RFC to be appropriate for sedentary work with an option to sit or stand, no required use of her lower extremities, and minimal changes in the workplace setting. (Tr. 352)

The medical records in this case support the ALJ's determination by showing a history and evidence of pain, but not to such an extent that it is a disabling impairment. On the contrary, the medical records contain evidence that the plaintiff is capable of performing a full range of medium work. (Tr. 107) Plaintiff received treatment on June 15, 2004 after re-injuring her knee, but the doctor noted that she was feeling better and was there to talk about life problems. (Tr. 237-238) Charles Safley, M.D., completed a consultation report on October 18, 2004. He noted that both knees had a mild valgus posture and that the right knee had full extension and flexion to just past 120 degrees. He found no significant crepitus with knee range of motion and did not find unusual varus or valgus laxity in the right knee. Furthermore, the x-ray showed no significant bony lesions. (Tr. 171-187)

The plaintiff was also evaluated by Dr. Seif Saeed, who filled out a medical questionnaire, reporting that he did not think the plaintiff had a significant mental or emotional problem that would limit her activities, interests, and ability to relate to others. (Tr. 226) In March, 2005 a medical consultant concluded that the plaintiff could occasionally lift and/or carry 50 lbs and could frequently lift and/or carry 25 lbs. (Tr. 107) The consultant also concluded that the plaintiff could stand and/or walk for about

9

six hours in an eight hour work day and was unlimited in her ability to use her arms and legs for pushing and pulling. (Tr. 107) Furthermore, the reviewer stated, "Based on MER and ADL in file, [plaintiff's] statements regarding the extent of her exertional limitations are partially credible." (Tr. 111) The ALJ notes that the consultant's opinion should be given significant weight, since it consistent with the record as a whole at the time. (Tr. 20)

The plaintiff was also examined by James Ostrander on Sept. 13, 2007. The notes from Ostrander's examination show that the plaintiff still experienced pain in her knee, but that the incision from her surgery had healed properly and there were no signs of infection. (Tr. 302-303) Furthermore, Ostrander noted that the plaintiff's ACL felt secure and stable and that an x-ray of the knee showed it to look relatively normal. (Tr. 302-303)

Finally, plaintiff's daily activities provide support for the ALJ's findings. The plaintiff stated that she lives with her six children. (Tr. 72) She takes two of her children to school at 7:15am, two more children at 8:30am, then the takes last two on Tuesdays, Thursdays, and Fridays. (Tr. 72) She goes to therapy from 10:00-11:00am and then picks up her son at noon. (Tr. 72) She stated that she is able to cook and clean, perform household duties, go grocery shopping, help her children with their homework, and give her children baths. (Tr. 72) The plaintiff stated that she does not receive help from others in caring for her children. (Tr. 73) She reported that she has no problem with personal care. (Tr. 73) She cooks complete meals twice a day on weekdays and makes snacks and three or four meals on the weekends. (Tr. 74) She reported that she doesn't need help or encouragement to perform household duties, such as cooking and cleaning.

(Tr. 74) She goes out about three times a week for therapy, doctor visits, school visits, or other scheduled events and is able to drive a car and go out alone. (Tr. 74) Plaintiff reports that she is able to go shopping 2-3 times per week for groceries, clothes, and household supplies. Shopping for groceries takes two to four hours, supplies takes about an hour, and shopping for clothes takes all day. (Tr. 75) She reported that her injuries have not affected her ability to manage her finances. (Tr. 75) Her hobbies include reading, shopping, and going to the park. (Tr. 76) The plaintiff's daily activities suggest that plaintiff is less adversely affected by her impairment than she claims and, consequently, plaintiff's daily activities provide support for the ALJ's decision.

Accordingly substantial evidence exists to support the ALJ's credibility determination. Plaintiff's testimony is not sufficiently corroborated by medical opinions, the history and course of her treatment, or her daily activities. Plaintiff's statements regarding her pain and other symptoms are insufficient by themselves to establish that the plaintiff is disabled, and in this case the ALJ had substantial evidence to reject plaintiff's statements regarding the effects of her impairment on her ability to work.

## V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, and that the plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof

as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Virginia M. Morgan
                                        United States Magistrate Judge

Dated: August 3, 2009

### Certificate of Service

The undersigned certifies that the foregoing document was served upon the parties of record via the court's ECF system and/or U.S. mail on August 3, 2009.

                                        s/Laurie Fromhart
                                        Judicial Assistant